UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIGUEL ANGEL HIPOLITO CASTANEDA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTHY AITKEN, et al.,<br><br>Defendants. | Case No. 15-cv-01635-MEJ<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

Petitioner Miguel Angel Hipolito Castaneda ("Petitioner"), a native and citizen of Mexico, has been detained by United States Immigration and Customs Enforcement ("ICE") since December 2013. Pet. ¶¶ 9, 17, Dkt. No. 1. Presently before the Court is his petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. No. 1. Respondents[1] have filed an Answer (Dkt. No. 13), and Petitioner has filed a Traverse (Dkt. No. 16). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** the petition for the reasons set forth below.

## BACKGROUND

Petitioner is a 23-year old man who entered the United States from Mexico with his family when he was eight years old. Pet. ¶ 2. On November 7, 2009, three gang members beat and stabbed Petitioner for his decision to leave the local clique. *Id.* ¶ 3. Petitioner cooperated with authorities in the case against his perpetrators, and his assistance led to the prosecution and

---

[1] Respondents are: Timothy Aitken, Field Office Director, San Francisco Filed Office, United States Bureau of Immigration and Customs Enforcement; Ron Murry, Warden, Mesa Verde Detention Facility; Jeh Johnson, Secretary, United States Department of Homeland Security; and Loretta E. Lynch, United States Attorney General.

1   deportation of some of the accused. *Id.* ¶ 4.

2         In 2010, Petitioner was arrested by the California Highway Patrol for Driving Under the
3   Influence ("DUI"). *Id.* ¶ 5; Liggett Decl., Dkt. No. 13-1, Ex. 14 (Arrest Report). Before he was
4   prosecuted, Petitioner was detained by immigration officials and placed in removal proceedings, at
5   which time he accepted a voluntary departure order in lieu of removal. Pet. ¶ 5; Liggett Decl., Ex.
6   2 (Sep. 24, 2010 Notice of Rights and Request for Disposition). At that time, ICE returned him to
7   Mexico. Pet. ¶ 5.

8         Petitioner states that he was unable to make a life for himself in Mexico, facing low wages,
9   high unemployment, and a lack of family ties. *Id.* ¶ 6. He also feared harm at the hands of those
10  who had previously victimized him, as some of them were deported to Mexico. *Id.* In February
11  2011, Petitioner attempted to illegally re-enter the United States, but he was apprehended at the
12  border and issued an expedited removal order. *Id.*; Liggett Decl., Ex. 4 (Feb. 4, 2011 Record of
13  Deportable/Inadmissible Alien); Ex. 5 (Feb. 4, 2011 Record of Sworn Statement in Proceedings
14  under Section 235(b)(1) of the Immigration and Nationality Act ("INA")); Ex. 6 (Feb. 4, 2011
15  Notice and Order of Expedited Removal). He was removed on February 13, 2011. Liggett Decl.,
16  Ex. 7 (Feb. 4, 2011 Notice to Alien Ordered Removed/Departure Verification). In 2012,
17  Petitioner again illegally re-entered the United States. Pet. ¶ 6; Liggett Decl., Ex. 8 (Jan. 22, 2012
18  Record of Deportable/Inadmissible Alien); Ex. 9 (Jan. 22, 2012 Record of Sworn Statement in
19  Affidavit Form). Petitioner was again apprehended, at which time the government reinstated his
20  2011 expedited removal order and removed him on March 5, 2012. Pet. ¶ 6; Liggett Decl., Ex. 12
21  (Mar. 5, 2012 Notice of Removal).

22        Petitioner re-entered without apprehension in the summer of 2013. Pet. ¶ 6. However, in
23  December 2013, he was arrested in Pittsburg, California and charged with a second DUI. *Id.* ¶¶ 6-
24  7; Liggett Decl., Ex. 15 (Arrest Report). On December 3, 2013, ICE again reinstated Petitioner's
25  2011 expedited removal order under 8 U.S.C. § 1231(a)(5), INA § 241(a)(5), and detained him
26  under 8 U.S.C. § 1231(a), INA § 241(a). Pet. ¶ 7; Basiglio Decl. ¶ 4, Dkt. No. 13-2; Liggett Decl.,
27  Ex. 16 (Dec. 3, 2013 Notice of Intent/Decision to Reinstate Prior Order).

28        Once in ICE custody, Petitioner asserted a fear of being returned to his native Mexico. Pet.

1  ¶ 9. United States Citizenship and Immigration Services ("USCIS") found that Petitioner
2  "established that there is a reasonable possibility he could establish eligibility for withholding of
3  removal on account of his membership in the particular social group of 'witnesses who testify
4  against gang member' in a full hearing before an immigration judge." Pet., Ex. G (Jan. 28, 2014
5  Positive Reasonable Fear Determination). Accordingly, ICE referred him to the San Francisco
6  Immigration Court for withholding-only proceedings.[2] Pet. ¶ 9; Liggett Decl., Ex. 13 (Feb. 5,
7  2014 Notice of Referral).
8  After holding hearings on February 18 and March 18, 2014, Immigration Judge ("IJ")
9  Anthony Murry denied Petitioner's request for withholding of removal under 8 U.S.C. §
10 1231(b)(3) and for protection under the Convention Against Torture. Pet. ¶ 9; Liggett Decl., Ex.
11 17 (Mar. 18, 2014 IJ Order and Oral Decision on Withholding-Only Proceedings). Petitioner
12 appealed the decision, but the Board of Immigration Appeals ("BIA") dismissed the appeal and
13 affirmed the IJ's finding. Pet. ¶ 9; Liggett Decl., Ex. 18 (Aug. 28, 2014 BIA Decision on
14 Withholding-Only Proceedings). On September 3, 2014, he appealed the BIA's decision in a
15 Petition for Review to the United States Court of Appeals for the Ninth Circuit. *Hipolito-*
16 *Castaneda v. Lynch*, No. 14-72718 (9th Cir. Sep. 3, 2014). The Ninth Circuit granted a temporary
17 stay of Petitioner's removal and delayed the briefing schedule for seven months at Petitioner's
18 request, because he was pursuing nonimmigrant visa status.[3] *Id.*; Pet., Ex. I.
19 Petitioner has been in immigration detention since December 3, 2013, when ICE reinstated
20 his 2011 removal order. Pet. ¶ 9. He sought a custody determination by the IJ, and on August 1,
21 2014, IJ Murry held a hearing to determine whether Petitioner was a danger to the community.
22 Pet., Ex. M (Tr. of Aug. 1, 2014 Bond Proceedings). During this hearing, Petitioner presented 28

---

[2] Pursuant to 8 C.F.R. § 208.31(e): "If an asylum officer determines that an alien . . . has a reasonable fear of persecution or torture, the officer shall so inform the alien and issue a Form I-863, Notice of Referral to the Immigration Judge, for full consideration of the request for withholding of removal only. Such cases shall be adjudicated by the immigration judge in accordance with the provisions of § 208.16. Appeal of the immigration judge's decision shall lie to the Board of Immigration Appeals."

[3] On July 9, 2014, Petitioner applied for a nonimmigrant U visa and submitted a Form I-192, Waiver of Inadmissibility. Pet., Ex. E.

1    letters of support from family and community members, proof of enrollment in a 90-day inpatient
2    rehabilitation program, and testified that he had been sober in detention for close to nine months.
3    *Id.*, Exs. K, L.  The government presented the police reports for his two DUI arrests.  *Id.*, Ex. M.
4    　　　　On August 11, 2014, the IJ issued a written decision and found that the government
5    showed by clear and convincing evidence that Petitioner is a danger to the community and should
6    not be released from immigration detention.  Pet., Ex. J (IJ Bond Memorandum Decision).  The IJ
7    noted that Petitioner is single, has no children, and has no assets of substance.  *Id.* at 1.  He also
8    noted that Petitioner admitted he was involved with a street gang from ages 16 to 18, although he
9    did credit Petitioner for testifying against other gang members.  *Id.*  The IJ recounted Petitioner's
10   2010 DUI arrest, noting that police reports indicated Petitioner attempted to drive away from
11   police officers, but drove over the curb onto the sidewalk, and that Petitioner's blood alcohol was
12   0.13%, "well over the adult legal limit of 0.08%."  *Id*.  The IJ also recounted Petitioner's 2013
13   DUI, noting that Petitioner admitted to consuming twelve beers and had been smoking marijuana.
14   *Id.* at 2.  Noting that the police reports indicated that Petitioner's blood alcohol content was 0.17%
15   and 0.18% in two tests, the IJ concluded that Petitioner was caught driving while two times over
16   the limit in 2013 and "was swerving so badly that he was crossing into the lane which was meant
17   for traffic coming in the opposite direction."  *Id.*  Based on these events, the IJ determined that
18   Petitioner's conduct "was highly dangerous to others" and "showed a total disregard for the safety
19   of other persons."  *Id.*  The IJ acknowledged the letters of support, but found that "none of
20   [Petitioner's] supporters were able to keep [him], either in 2010 or 2013, from driving on public
21   roads while severely impaired by alcohol and drugs."  *Id.*  As to Petitioner's enrollment in an
22   alcohol program, "given [Petitioner's] track record," the IJ found "his promise to participate in an
23   alcohol treatment program is not sufficient to assure the safety of the community."  *Id.* at 2-3.
24   Thus, the IJ found that the government had shown, by clear and convincing evidence, that
25   Petitioner was a danger to the community and denied his release from immigration detention.  *Id.*
26   at 3.
27   　　　　Petitioner appealed the bond decision to the BIA, which affirmed the IJ's determination.
28   Pet. ¶ 12; Liggett Decl., Ex. 23 (Nov. 17, 2014 BIA Decision on Custody Determination).  He

4

later sought a motion for reconsideration of the BIA's decision, which BIA granted, but subsequently reaffirmed the IJ's bond determination. Pet. ¶ 12; Liggett Decl., Ex. 24 (Feb. 3, 2015 BIA Decision on Custody Determination). He then petitioned the IJ for a second bond hearing, which the IJ denied because "no legal basis for a second bond hearing has been shown." Pet. ¶ 13, Ex. N (Apr. 3, 2015 Mot. for Custody Redetermination; Apr. 6, 2015 Order denying request).

Petitioner is currently detained at the Mesa Verde Detention Facility in Bakersfield, California. Basigligo Decl. ¶ 9. He states that he has been sober for the 18 months he has been detained by ICE. Pet., Ex. A (Petitioner's Decl. for U-nonimmigrant status) ¶ 11. He has been admitted to a rehabilitation facility and states that he intends to go should he be released on bond pending resolution of his petition for review by the Ninth Circuit. *Id.*

## JURISDICTION

Under 28 U.S.C. § 2241, the district court may grant a writ of habeas corpus when a petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "[T]he Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Demore v. Kim*, 538 U.S. 510, 523 (2003) (citations omitted); *see also Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (holding that a person challenging a bond hearing determination rendered by an IJ may appeal to the BIA and, if dissatisfied with the BIA's decision, may then file a habeas petition in the district court). Here, Petitioner argues that his continued detention violates his due process rights, and Respondents present no challenges to jurisdiction. Accordingly, the Court finds that jurisdiction is proper.

## DISCUSSION

Petitioner brings two claims for relief: (1) violation of the INA based on prolonged detention with inadequate custody review, and (2) violation of his Fifth Amendment Due Process rights based on prolonged detention without custody review. Pet. ¶¶ 50-54. Petitioner argues that the IJ's denial of his request for release on bond is erroneous as a matter of law because: (1) the evidence presented at the bond hearing cannot support the IJ's finding that the government met its burden of clear and convincing evidence that Petitioner is a danger to the community; and (2)

1  regardless of the first hearing, more than ten months have passed since the IJ denied his request for
2  release on bail, and he therefore must be afforded another bond hearing before a new IJ to
3  determine his custody. *Id.* ¶¶ 26, 44.

4  Respondents argue that Petitioner's bond hearing was constitutionally sound, as the
5  evidence supports the IJ's determination that he is a danger to the community and should not be
6  released from immigration detention. Answer at 10. Respondents further argue that the law does
7  not authorize a second bond hearing, and Petitioner's detention is not indefinite. *Id.* at 14.

**A.     Withholding Proceedings**

If an alien removed pursuant to a removal order subsequently re-enters the United States illegally, the original removal order may be reinstated by an authorized official. *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc); 8 C.F.R. § 241.8. To reinstate a removal order, the Department of Homeland Security ("DHS") must comply with the procedures set forth in 8 C.F.R. § 241.8(a) and (b). *Ortiz-Alfaro v. Holder*, 694 F.3d 955, 956 (9th Cir. 2012). When DHS reinstates a removal order, "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5).

8 C.F.R. § 241.8(e), however, "creates an exception by which an alien who asserts 'a fear of returning to the country designated' in his reinstated removal order is 'immediately' referred to an asylum officer who must determine if the alien has a reasonable fear of persecution or torture in accordance with 8 C.F.R. § 208.31." *Ortiz-Alfaro*, 694 F.3d at 956. If the asylum officer finds that the alien has not established a reasonable fear of persecution or torture, and an IJ affirms this determination, the matter is returned to DHS for execution of the reinstated order of removal without the opportunity to appeal to the BIA. 8 C.F.R. § 208.31(g). On the other hand, if the asylum officer makes a positive reasonable fear determination, as in Petitioner's case, the matter is referred to an IJ "for consideration of the request for withholding of removal only." *Id.* § 208.31(e). The IJ's decision to grant or deny withholding of removal may be appealed to the BIA. *Id.* § 208.31(g)(2)(ii).

6

**B.     Statutory Authority for Petitioner's Immigration Detention**

The parties dispute the statutory basis for Petitioner's detention. Petitioner maintains that his detention is governed by 8 U.S.C. § 1226, and that he is therefore entitled to a bond hearing. Traverse at 12-13.[4] Respondents maintain that Petitioner is lawfully detained under 8 U.S.C. § 1231(a)(6), and is therefore subject to mandatory post-order detention. Answer at 5-9.

"The statutory scheme governing the detention of aliens in removal proceedings is not static; rather, the Attorney General's authority over an alien's detention shifts as the alien moves through different phases of administrative and judicial review." *Casas-Castrillon v. Dep't of Homeland Sec.*, 535 F.3d 942, 945 (9th Cir. 2008). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008).

Before removal proceedings are completed, the Attorney General has the discretionary authority to detain or release an alien under section 1226(a). *See* 8 U.S.C. § 1226(a)(2). After removal proceedings have been completed, the detention or release of an alien is governed by section 1231(a), which governs "detention, release, and removal of aliens ordered removed." 8 U.S.C. § 1231(a).

Section 1231 authorizes detention in only two circumstances. First, "[d]uring the removal period," the Attorney General "shall" detain the alien. 8 U.S.C. § 1231(a)(2). The "removal period" generally lasts 90 days, and it begins on the latest of the following: (1) the date the order of removal becomes final; (2) if the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (3) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). This 90-day detention period is non-discretionary. *Khotesouvan v. Morones*, 386 F.3d 1298, 1299-1300 (9th Cir. 2004). The removal period may be extended beyond the 90 days if the alien fails or refuses to make a timely application for travel in

---

[4] As Petitioner's Traverse does not contain its own, the page numbers cited herein refer to the ECF page numbers.

7

good faith. 8 U.S.C. § 1231(a)(1)(C).

Second, "beyond the removal period," the Attorney General "may" continue to detain certain aliens as specified in the statute, or release them under an order of supervision. 8 U.S.C. § 1231(a)(6); *Prieto-Romero*, 534 F.3d at 1059. Specifically, "[a]n alien ordered removed who is inadmissible . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period." 8 U.S.C. § 1231(a)(6). "Section 1231(a)(6) encompasses . . . aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States." *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1085 (9th Cir. 2011).

The Ninth Circuit has not considered whether a reinstated order of removal is administratively final where there are ongoing withholding of removal proceedings.[5] However, section 1231(a)(5) provides that "the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed." 8 U.S.C. § 1231(a)(5). "Thus the reinstated removal order relates back to the date of the original removal order—an administratively final order—and is itself administratively final because it cannot be reopened or reviewed." *Acevedo-Rojas v. Clark*, 2014 WL 6908540, at *4 (W.D. Wash. Dec. 8, 2014); *see also Giron-Castro v. Asher*, 2014 WL 8397147, at *2 (W.D. Wash. Oct. 2, 2014). "[E]ven if an alien is granted withholding of removal, that relief is only country specific and will have no effect on the validity of the reinstated removal order. Although such an alien can no longer be removed to the country specified in the removal order, the alien can still be removed from the United States." *Acevedo-Rojas*, 2014 WL 6908540, at *4. Thus, because Petitioner's reinstated removal order was administratively final at the time it was reinstated, his detention is authorized by section

---

[5] In *Ortiz-Alfaro v. Holder*, the Ninth Circuit considered whether a reinstated removal order was final for purposes of judicial review. 694 F.3d at 958. It held that "where an alien pursues reasonable fear and withholding of removal proceedings following the reinstatement of a prior removal order, the reinstated removal order does not become final until the reasonable fear of persecution and withholding of removal proceedings are complete." *Id.* However, the Ninth Circuit's analysis of the finality of the reinstated removal order was for purposes of judicial review, and thus *Ortiz-Alfaro* is not dispositive as to whether Petitioner's reinstated removal order is *administratively* final.

8

1231(a)(6), not by section 1226(a).

## C.    Lawfulness of Detention

Petitioner has been detained for more than 90 days and thus, as noted above, his detention falls under section 1231(a)(6), which entitles the government to detain aliens beyond the 90-day removal period or release them on supervision. Continued detention beyond the end of the removal period is governed by the Supreme Court's decision in *Zadvydas v. Davis*, 533 U.S. 671 (2001). In *Zadvydas*, the Court held that section 1231(a)(6) implicitly limits an alien's detention to a period reasonably necessary to bring about that alien's removal from the United States, and does not permit "indefinite" detention. *Id.* at 701. Under *Zadvydas*, "[a]n alien is entitled to habeas relief after a presumptively reasonable six-month period of detention under § 1231(a)(6) only upon demonstration that the detention is 'indefinite'—i.e., that there is 'good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.'" *Diouf v. Mukasey ("Diouf I")*, 542 F.3d 1222, 1233 (9th Cir. 2008) (quoting *Zadvydas*, 533 U.S. at 701).

Here, Petitioner's 90-day removal period began to run when he entered ICE's custody on December 3, 2013, and therefore ended on March 3, 2014. *See* 8 U.S.C. § 1231(a)(1)(B)(i); Liggett Decl., Ex. 16. Thus, the six-month presumptively reasonable period expired on or about June 1, 2014, yet Petitioner remains detained more than one year later. "When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound. Furthermore, the risk of an erroneous deprivation of liberty in the absence of a hearing before a neutral decision maker is substantial." *Diouf II*, 634 F.3d at 1091-92. The IJ may still find the detention justifiable, but a hearing provides the detainee with a necessary constitutional safeguard. *Id.* at 1084, 1092.

There is no dispute that Petitioner has already received a bond hearing pursuant to *Rodriguez v. Robbins*, 715 F.3d 1127 (9th Cir. 2013). However, he contends that (1) the bond hearing was constitutionally inadequate; (2) the IJ was not a neutral arbiter; and (3) his continued detention without a new bond hearing violates his right to be free of prolonged civil detention without adequate justification. Pet. ¶¶ 50-54.

9

1.     Whether Petitioner Received an Adequate Bond Hearing

Petitioner first argues that his August 1, 2014 bond hearing was inadequate because the IJ erroneously found him a danger to the community. Pet. ¶ 51. Although he does not dispute that the two police reports submitted by the government are probative evidence, he maintains that they are uncorroborated hearsay and cannot alone support the government's burden of clear and convincing evidence to deny him release on bond. Traverse at 13. Petitioner further argues that the bond hearing was fundamentally unfair because the IJ who conducted it had already denied the merits of Petitioner's withholding case. Pet. ¶ 42. Petitioner maintains that "[a] perverse incentive exists where the same adjudicator who has already denied a person's deportation case later determines his custody." *Id.*

Respondents argue that the evidence supports the IJ's determination that Petitioner is a danger to the community because the police reports constitute probative evidence and there was no reason for their exclusion. Answer at 10-12. Respondents maintain that the IJ was a neutral arbiter and argue there is nothing improper with the same IJ presiding over both proceedings. *Id.* at 13.

The Ninth Circuit has held that immigrants facing prolonged detention are entitled to a bond hearing to establish whether their release would pose a danger to the community or a flight risk. *Casas-Castrillon*, 535 F.3d at 944. In *Singh v. Holder*, the Ninth Circuit established certain procedures that must be followed in those bond hearings (also referred to as "*Casas* hearings") to comport with due process: (1) the IJ must place the burden of proof on the government; (2) the government must prove by clear and convincing evidence that continued detention is justified; (3) the immigrant's criminal history alone may be insufficient to meet the dangerousness standard that must be met to deny bond and justify detention; and (4) the government must provide contemporaneous records of *Casas* hearings. 638 F.3d 1196, 1203-08 (9th Cir. 2011). The Court will now address each of those elements.

*a.     Burden and Standard of Proof*

"The burden of establishing whether detention is justified falls on the government." *Id.* at 1203. Given the substantial liberty interest at stake, the government must prove by clear and

10

convincing evidence that an immigrant is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing. *Id*. Here, Petitioner sought a custody determination by the IJ, and on August 1, 2014, IJ Murry held a hearing to determine whether Petitioner was a danger to the community. Pet., Ex. M (Tr. of Aug. 1, 2014 Bond Proceedings). During this hearing, the IJ stated that the burden is on the government to establish whether Petitioner is eligible for a bond. *Id*. at 10. The IJ also informed the government that it must establish Petitioner's bond eligibility by clear and convincing evidence. *Id.* In his August 11, 2014 decision, the IJ determined that "the government has shown by clear and convincing evidence that respondent is a danger to the community." *Id.*, Ex. J (IJ Bond Memorandum Decision) at 3. Thus, there can be no dispute that the IJ properly placed the burden of proof on the government.

### *b.   Dangerousness Standard*

The purpose of an individualized *Casas* bond hearing is to ensure that the government's interest in detaining the immigrant and protecting the community from danger is actually served by detention. *Singh*, 638 F.3d at 1206. "[I]n considering whether the government has proven dangerousness, IJs should consider the factors identified in *In re Guerra*, 24 I. & N. Dec. 37 (B.I.A. 2006), which include the extensiveness of an alien's criminal record, the recency of his criminal activity, and the seriousness of his offenses." *Rodriguez*, 715 F.3d at 1135 (citing *Singh*, 638 F.3d at 1206). "An Immigration Judge has broad discretion in deciding the factors that he or she may consider in custody redeterminations. The Immigration Judge may choose to give greater weight to one factor over others, as long as the decision is reasonable." *In Re Guerra*, 24 I. & N. Dec. at 40.

In determining whether Petitioner was entitled to a bond, the IJ looked to several factors, including Petitioner's criminal record. Pet., Ex. J (IJ Bond Memorandum Decision) at 1-2. Petitioner focuses on the police reports, arguing that they are uncorroborated and therefore insufficient to meet the government's burden. Traverse at 13. However, "[t]he Federal Rules of Evidence do not apply strictly in immigration removal proceedings." *Singh*, 638 F.3d at 1209 (finding no due process violation where IJ admitted petitioner's unauthenticated Record of Arrest and Prosecution sheet into evidence). Furthermore, "[t]he determination of the Immigration Judge

as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service." 8 C.F.R. § 1003.19(d). "Requiring the parties to adhere strictly to the Federal Rules of Evidence would run counter to this regulation and the informal nature of the proceedings." *Singh*, 638 F.3d at 1209. Thus, the fact that the police reports may be hearsay is not dispositive. Rather, the test for whether the police reports may be considered is whether they are probative and whether their admission was fundamentally fair. *Baliza v. I.N.S.*, 709 F.2d 1231, 1233 (9th Cir. 1983) (fact that affidavit was hearsay not dispositive in the context of a deportation proceeding); *Umoh v. Mukasey*, 317 F. App'x 714, 718 (10th Cir. 2008) (IJ did not violate "due process rights by considering evidence contained in police reports and arrest records that did not result in criminal convictions" as part of adjustment of status and waiver of inadmissibility proceedings).

Here, Petitioner suffered no prejudice when the IJ admitted his police reports into evidence as Petitioner was questioned about the information on the reports and allowed to testify as to their veracity. Pet., Ex. M (Tr. of Aug. 1, 2014 Bond Proceedings) at 1-5. Despite this, Petitioner argues that the IJ erred as a matter of law "by finding that the government met its burden of clear and convincing proof by relying solely on hearsay as contained in two uncorroborated police reports." Traverse at 14. Petitioner provides no authority in support of this argument. Regardless, a review of the record shows that the IJ considered more than the two police reports. The IJ noted that Petitioner is single, has no children, and has no assets of substance. Pet., Ex. J (IJ Bond Memorandum Decision) at 1. He also noted that Petitioner admitted he was involved with a street gang from ages 16 to 18, although he did credit Petitioner for testifying against other gang members. *Id.* The IJ recounted Petitioner's 2010 DUI arrest, noting that police reports indicated Petitioner attempted to drive away from police officers, but drove over the curb onto the sidewalk, and that Petitioner's blood alcohol was 0.13%, "well over the adult legal limit of 0.08%." *Id.* The IJ also recounted Petitioner's 2013 DUI, noting that Petitioner admitted to consuming twelve beers and had been smoking marijuana. *Id.* at 2. Noting that the police reports indicated that Petitioner's blood alcohol content was 0.17% and 0.18% in two tests, the IJ concluded that Petitioner was caught driving while two times over the limit in 2013 and "was

12

swerving so badly that he was crossing into the lane which was meant for traffic coming in the opposite direction." *Id.* The IJ acknowledged the letters of support, but found that "none of [Petitioner's] supporters were able to keep [him], either in 2010 or 2013, from driving on public roads while severely impaired by alcohol and drugs." *Id.* As to Petitioner's enrollment in an alcohol program, "given [Petitioner's] track record," the IJ found "his promise to participate in an alcohol treatment program is not sufficient to assure the safety of the community." *Id.* at 2-3. Based on these events, the IJ determined that Petitioner's conduct "was highly dangerous to others" and "showed a total disregard for the safety of other persons." *Id.*

Petitioner also argues that, although he was charged with two DUIs, he did not admit that his conduct constituted drunk driving. Traverse at 15. However, the "assumption [is] that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Keith v. Volpe*, 858 F.2d 467, 481 (9th Cir. 1988), *cert. denied*, 493 U.S. 813, 110 (1989). Other than his self-serving testimony denying the officer's reports, Petitioner came forward with no reasons at the hearing why the officers fabricated their reports, or why the IJ should disregard two DUI arrests that occurred over three years apart and by different officers. Considering this evidence as a whole, the IJ was within his discretionary authority in concluding that the government had shown, by clear and convincing evidence, that Petitioner was a danger to the community.

### c. Records

Finding that a post hoc memorandum following a bond determination hearing is inadequate, the Ninth Circuit has held that due process requires a contemporaneous record of such hearings, which could, for example, be satisfied by transcript or oral recording. *Singh*, 638 F.3d at 1208-09. Based on the record provided in this case, which includes a hearing transcript and the IJ's order, the Court finds that Petitioner's bond hearing complied with due process requirements as established in *Singh*.

2. <u>Whether the IJ Presiding at Petitioner's Bond Hearing was a Neutral Arbiter</u>

Next, Petitioner argues that his bond hearing was "fundamentally unfair" because IJ Murry, who held both Petitioner's withholding-only and detention proceedings, was not a "neutral

13

magistrate." Pet. ¶ 41. Specifically, Petitioner alleges that there would be a "perverse incentive" for the IJ to deny an alien's requests in proceedings, and then determine his custody. *Id.* ¶ 42. Petitioner alleges that his detention presents obstacles to pursuing his appeal of the IJ's denial of his withholding request and that "[b]y continuing to deny Mr. Hipolito liberty, the immigration judge ensures that Mr. Hipolito continues to confront these obstacles during his appeal of the immigration judge's decision." *Id.* Respondents argue that there is no evidence that the IJ acted in his personal self-interest in denying Petitioner's bond hearing, and no evidence that he co-mingled information from the two proceedings. Answer at 14. Petitioner does not address Respondents' arguments in his Traverse.

As an initial matter, "there is nothing improper with the same IJ presiding over both the removal and bond proceedings." *Dela Cruz v. Napolitano*, 764 F. Supp. 2d 1197, 1204 (S.D. Cal. 2011) (citing *Joseph v. Holder*, 600 F.3d 1235, 1242 (9th Cir. 2010) (noting "the IJ properly presided over both [the removal and bond] proceedings")). Further, the immigration regulations treat bond determination hearings "separate and apart" from any "deportation or removal proceeding or hearing." 8 C.F.R. § 1003.19(d); *In Re Adeniji*, 22 I. & N. Dec. 1102, 1115 (BIA 1999) (declining to consider information presented during respondent's removal hearing in connection with his appeal of a bond determination because "[c]ustody proceedings must be kept separate and apart from, and must form no part of, removal proceedings."). Here, as Respondents point out, there is no evidence that the IJ co-mingled information from the two proceedings and no evidence that the he acted in his personal self-interest in denying Petitioner's bond hearing. Accordingly, the Court concludes that the bond hearing was not procedurally deficient merely because the same IJ presided over both the bond and the withholding proceedings.

3. <u>Whether Petitioner's Continued Detention Mandates a Second Bond Hearing</u>

Finally, Petitioner argues that, even if the Court finds the first bond hearing sufficient, ten months have passed and he is therefore entitled to a new review of his custody situation. Pet. ¶ 54; Traverse at 15. He contends that he presented no danger to the community a year ago when he first sought release on bond, "and the point is clearer now that he has been sober for 18 months and as demonstrated by his continued desire to attend rehabilitation." Traverse at 16. Thus, when

balanced against the government's purpose in keeping him detained, his "weighty liberty interest after over 18 months of detention warrants another custody redetermination hearing." *Id.*

Respondents argue that the Court should reject Petitioner's request for a second bond hearing because once an alien receives a bond hearing before an IJ to determine flight risk and dangerousness, the alien's due process claim has been fully remedied. Answer at 14.

Even if Petitioner's continued detention is authorized, "due process requires 'adequate procedural protections' to ensure that the government's asserted justification for physical confinement 'outweighs the individual's constitutionally protected interest in avoiding physical restraint.'" *Prieto-Romero*, 534 F.3d at 1065 (quoting *Zadvydas*, 533 U.S. at 690-91). "[P]rolonged detention of aliens is permissible only where the Attorney General finds such detention individually necessary by providing the alien with an adequate opportunity to contest the necessity of his detention." *Casas-Castrillon*, 535 F.3d at 951.

In *Prieto-Romero*, the Ninth Circuit concluded that, even after a petitioner receives a bond hearing, detention may not be indefinite; rather, "the Attorney General's detention authority . . . [is] limited to the period reasonably necessary to bring about an alien's removal from the United States." 534 F.3d at 1063. Although the court found that the petitioner's three-year long detention qualified as prolonged, it held that the detention did not qualify as indefinite. *Id.* at 1062. The court distinguished *Zadvydas*, in which the Supreme Court concluded that a noncitizen detainee was entitled to release if he demonstrated "no significant likelihood of removal in the reasonably foreseeable future." *Id.* (citations and quotation marks omitted). The court emphasized that the *Zadvydas* petitioners could not be removed because although they had exhausted all judicial and administrative appeals processes and had been ordered removable, their designated countries either refused to accept them or lacked a repatriation treaty with the United States, placing them in a "removable-but-unremovable limbo." *Id.* (citations and quotation marks omitted). In contrast, the Ninth Circuit noted no such obstacles for deporting Prieto-Romero to Mexico in the event of unsuccessful judicial review; thus, the petitioner faced a "significant likelihood of removal in the reasonably foreseeable future." *Id.* The court concluded that, despite the judicial review process causing delays in removal, and notwithstanding the absence of a definite end date in his detention,

these factors alone did not make the petitioner's detention indefinite. *Id.* at 1063.

Here, although Petitioner's detention is similarly prolonged, it does not qualify as indefinite. Under *Prieto-Romero*, neither the ongoing delays resulting from the review process of his request for withholding of removal under 8 U.S.C. § 1231(b)(3), nor the lack of a definite end date for his custody, render his detention indefinite. 534 F.3d at 1063. While the Court recognizes that Petitioner's status is presently uncertain as to his withholding request, the removal decision itself has been finalized, and Petitioner has failed to demonstrate that his removal from the United States is "not reasonably foreseeable" as that concept was understood by the *Zadvydas* Court. In other words, regardless of the outcome of his appeal, Petitioner presents no evidence that the United States will be unable to remove him.

Further, unlike the *Zadvydas* petitioners, there is no evidence that Petitioner is unremovable because his home country of Mexico will not accept him; rather, the government is ultimately capable of deporting him at any time and has demonstrated its intent to do so through the reinstated removal order. As discussed above, even if Petitioner is granted withholding of removal, that relief is only country specific and will have no effect on the validity of the reinstated removal order. Thus, while Petitioner's continued detention is prolonged, it is reasonably foreseeable, and he has failed to demonstrate that he is subject to indefinite detention. *See Almousa v. Gonzalez*, 2008 WL 4657809, at *1 (E.D. Cal. Oct. 21, 2008) (finding petitioner's three-year long detention prolonged but nonetheless authorized because his removal was reasonably foreseeable); *Carmona v. Aitken*, 2015 WL 1737839, at *7-8 (N.D. Cal. Apr. 10, 2015) (16-month long detention authorized); *Nuila-Chavez v. Wright*, 2008 WL 4104280, at *3 (E.D. Cal. Sept. 2, 2008), *report and recommendation adopted*, 2008 WL 4699769 (E.D. Cal. Oct. 22, 2008) (two-and-a-half year detention authorized).

Petitioner argues that his case warrants a new bond hearing "particularly in light of his strong showing of eligibility for a U-Visa." Pet. ¶ 46. However, the record shows that USCIS denied Petitioner's application for a waiver of his inadmissibility, Liggett Decl., Ex. 20 (Jan. 15, 2015 USCIS Decision Denying Waiver Application); denied his U visa application, *id.*, Ex. 21 (USCIS Decision Denying Petition for U Nonimmigrant Visa Status); and denied his motion to

16

reconsider the decisions, *id.*, Ex. 22 (Form I-192 Waiver Application marked received February 12, 2015, and marked "Dismissed March 13, 2015"). He cites no authority to support the purported need for additional bond hearings in these circumstances.

Petitioner cites *Rodriguez* in support of his argument that due process requires a bond hearing after six months, regardless of whether a bond hearing has already occurred. Pet. ¶ 46 (citing *Rodriguez*, 715 F.3d at 1135-36). However, as Petitioner himself suggests, *Rodriguez* holds that detention over six months is prolonged and implicates an alien's Due Process rights, "requiring an individualized bond hearing before a neutral magistrate." Pet. ¶ 46 (citing *Rodriguez*, 715 F.3d at 1135-36). It does not require a second hearing. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings . . . detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523.

## CONCLUSION

Based on the analysis above, the Court **DENIES** Petitioner's petition for writ of habeas corpus.

**IT IS SO ORDERED.**

Dated: June 23, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge

17